# Complaint (ADA Discrimination & Retaliation)

Ayisha G. Oglivie
720 West 170th Street, #1D
New York, NY 10032
347-389-2445
ayisha.oglivie@gmail.com
**Plaintiff, Pro Se**

**UNITED STATES DISTRICT COURT**
 **[DISTRICT OF NEW YORK]**

**Ayisha G. Oglivie**, |
*Plaintiff,* | Civil Action No.: (To be assigned by the court)
v. |
**Spar Marketing Force, Inc.**, | (*to be assigned by the Court*)
*Defendant.* |\_\_\_\_\_|

## COMPLAINT

**Introduction:** This is a civil action for employment discrimination and retaliation under Title I of the **Americans with Disabilities Act** (ADA), 42 U.S.C. § 12101 *et seq.* Plaintiff Ayisha G. Oglivie, proceeding **pro se**, alleges that her employer, Spar Marketing Force, Inc., discriminated against her because of her disability and retaliated against her for requesting reasonable accommodations. Plaintiff seeks appropriate relief for the harm caused by Defendant's unlawful conduct.

**Jurisdiction and Venue:**

1. This Court has subject matter jurisdiction over Plaintiff's Americans with Disabilities Act (ADA) claims pursuant to 28 U.S.C. § 1331, as this action arises under federal law. Additionally, this Court has jurisdiction under 42 U.S.C. § 12117(a), incorporating the powers, remedies, and procedures of Title VII of the Civil Rights Act into ADA claims.

2. **Venue** is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), because Plaintiff resides in this judicial district, Defendant regularly conducts business within this district, and Plaintiff was initially hired by Defendant to perform work in New York State. Plaintiff has performed assignments for Defendant in multiple jurisdictions, including New York State. Further, filing in another jurisdiction (such as New Jersey, where one significant incident occurred) would impose substantial hardship on Plaintiff, due to financial distress and loss of transportation caused directly by Defendant's alleged discriminatory and retaliatory actions.

Thus, venue in the Southern District of New York is proper, appropriate, and justified.

3. Plaintiff has exhausted all required administrative remedies prior to filing this suit. She filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), Charge No. 524-2024-00363, and the EEOC issued a Dismissal and **Notice of Right to Sue** on January 24, 2025. This Complaint is being filed within 90 days of Plaintiff's receipt of that Notice, making it timely.

**Parties:**

4. **Plaintiff:** Ayisha G. Oglivie is an individual residing at 720 West 170th Street, #1D, New York, NY 10032. At all relevant times, Ms. Oglivie was an employee of Defendant Spar Marketing Force, Inc. within the meaning of the ADA. Plaintiff is a qualified individual with a disability, as described below.

5. **Defendant:** Spar Marketing Force, Inc. (referred to as "Spar" or "Defendant") is a for-profit corporation that provides merchandising and marketing services to retail businesses. On information and belief, Spar Marketing Force, Inc. is incorporated in Nevada and has its principal place of business at 1910 Opdyke Court, Auburn Hills, Michigan 48326. Spar conducts substantial business in both New York & New Jersey and was Plaintiff's employer for purposes of the ADA. At all relevant times, Defendant had well over 15 employees and was engaged in an industry affecting interstate commerce, bringing it under the coverage of the ADA.

**Factual Background:**

6. **Employment with Spar:** Plaintiff began working for Spar Marketing Force, Inc. in 2023 as a merchandising representative, performing retail merchandising and marketing assignments at client retail stores. Her job involved tasks such as organizing product displays, performing inventory audits, and setting up promotional materials at store locations on behalf of Spar.

7. **Pre-Existing Knee Condition:** Prior to her employment with Spar, Plaintiff had a documented knee condition that substantially limits one or more major life activities, including walking, standing, lifting, and kneeling. This **pre-existing knee injury** was known to Plaintiff and was documented medically. Despite this condition, Plaintiff was able to perform the essential functions of her job when provided minor accommodations or adjustments.

8. **On-the-Job Injury on Oct 9, 2023:** On October 9, 2023, while working on a project at a Walmart store in Howell, New Jersey (a client location assigned by Spar), Plaintiff **sustained an injury to her knee**. This workplace incident aggravated her pre-existing knee condition, causing her significant pain and mobility difficulties. The injury occurred

in the course of her employment duties (for example, while moving merchandise or equipment) and was immediately reported to her supervisor or management at Spar.

9. **Notification and Accommodation Requests:** Following the October 9, 2023 injury, Plaintiff promptly notified Defendant of her condition and the incident. She provided information about her knee injury and reiterated her ongoing physical limitations. **Plaintiff requested reasonable accommodations** to enable her to continue working. These accommodation requests included, for example:

   ○ Temporarily refraining from strenuous activities (such as heavy lifting or prolonged standing) to allow her knee to recover;

   ○ Reassignment to lighter duties or different projects that would be less physically demanding on her knee; and

   ○ Scheduling flexibility or a brief medical leave to obtain treatment for her injury.

10. These requests were communicated in good faith, and Plaintiff was willing to discuss and try alternative accommodations through an interactive process.

11. **Failure to Accommodate:** Defendant Spar Marketing Force, Inc. did not provide any of the accommodations requested by Plaintiff. **No interactive process** was undertaken by the Defendant to explore possible accommodations for Plaintiff's knee condition.Instead of engaging in good faith to find a reasonable accommodation, Defendant's management effectively ignored or outright denied her requests.

    Specifically, Plaintiff's direct supervisor openly berated Plaintiff on the work floor, instructing her to perform a task that was neither standard practice nor safe. Plaintiff had clearly communicated her physical limitations due to her recent knee injury and explained that attempting the task requested—moving two large shelves attached by a connecting rail without removing the rail—would exacerbate her injury and place her at risk of further serious harm. Moreover, Plaintiff had already been successfully performing her assigned duties in a modified, safe manner and was ahead of other teammates in completing required tasks. Therefore, her request to continue safely performing these tasks posed no hardship or disruption to Defendant's operations, neither by slowing down the assignment nor by affecting its completion.

    Despite this, Plaintiff's supervisor continued to insist on the unsafe task, refused to engage in any meaningful discussion about alternative accommodations, and escalated to openly hostile and retaliatory behavior, further exacerbating Plaintiff's distress and effectively denying her right to reasonable workplace accommodations.

12. **Exclusion from Further Work:** In the period immediately after her injury and accommodation request, Plaintiff noticed a stark change in how she was treated by Spar. She was **excluded from further projects and assignments**. Prior to her injury, Plaintiff

had regularly received work assignments from Spar's scheduling coordinators for various retail projects. However, once she informed the company of her knee injury and asked for accommodations, she was abruptly removed from the project in Howell, NJ and those work opportunities ceased. Defendant did not schedule Plaintiff for any new assignments after October 9, 2023.  Plaintiff did not receive any communications from Defendant until well after they were informed of the EEOC complaint.

13. **Constructive Termination:** By removing her for the contracted project and refusing to assign her any further work, Defendant effectively terminated Plaintiff's employment. Although Spar did not formally fire Ms. Oglivie in writing on that date, the complete lack of further assignments acted as a **constructive discharge**. In or about late October 2023, Plaintiff was given no choice but to consider herself terminated or removed from Spar's workforce because she was not being scheduled for any work at all. This abrupt end to her employment occurred **directly after** she disclosed her disability and injury and requested accommodations, suggesting a direct causal link.

14. **Retaliatory Motive:** Plaintiff believes and avers that Spar's decision to stop giving her work was not a coincidence, but rather a **retaliatory response** to her protected activity—namely, her request for reasonable accommodation under the ADA following a work-related reinjury to her knee. Rather than working with Plaintiff to ensure a safe and lawful accommodation process, Defendant chose to **sidelined her completely**, effectively **penalizing her for being injured** and for asserting her rights.

    Furthermore, Plaintiff believes that her supervisor's conduct may have been **influenced by personal motives** unrelated to job performance or business necessity. Specifically, the day after Plaintiff stayed home to care for her injured knee—a day she notified management about in advance—her supervisor became openly hostile. Notably, this same supervisor had previously relied on Plaintiff for **daily personal transportation for himself and his mate (also an employee)**, despite company policy requiring employees to **provide their own transportation** to and from assignment sites. Plaintiff's injury and absence on October 10, 2023, interfered with the supervisor's personal expectations, which may have contributed to his discriminatory and retaliatory treatment upon her return.

    This **escalation of hostility** occurred the very next day, October 11, 2023, when the supervisor berated Plaintiff on the work floor, dismissed her concerns about injury and safety, and ultimately had her removed from the project—even though she was ahead of schedule in completing her assigned tasks and not causing any delay or disruption to team productivity. These facts strongly support Plaintiff's belief that **personal animus and retaliatory intent** motivated Defendant's actions in violation of the ADA.

15. **Harm Suffered:** As a result of Defendant's actions, Plaintiff **suffered multiple forms of harm**:

- **Economic harm:** Plaintiff lost her source of income from Spar from late October 2023 onward. She missed out on wages and opportunities for continued employment. This sudden loss of income caused financial strain, loss of assets, damage to her credit and created a cascade effect that reverberated into other economic harm.

- **Physical harm:** Deprived of accommodations or support, Plaintiff's knee condition **worsened significantly** and took longer to heal. The lack of appropriate work adjustments, the emotional distress of retaliation, and the logistical pressures she was placed under all **exacerbated her physical pain and mobility limitations**.

  Specifically, Plaintiff was given an unreasonably short window to vacate the company-assigned lodging after being removed from the project. While still injured and visibly limping, she was **forced under duress to pack all of her personal belongings without assistance**. These items included cooking equipment, a computer and monitor, clothing for an extended stay, food, and personal care products—all of which required substantial physical effort to transport and organize. The company provided **no help or consideration for her physical state**, despite being fully aware of her recent workplace injury.

  This forced relocation, while Plaintiff was already experiencing swelling and mobility challenges, **further strained her injured leg**. Plaintiff later learned that she had sustained **two meniscus tears** in her knee—**a condition not previously diagnosed before this incident**. As a direct consequence of Spar's disregard for her medical condition and failure to accommodate her injury, Plaintiff experienced **greater long-term damage to her knee**, further limiting her mobility and compounding the recovery process.

- **Emotional distress:** Plaintiff experienced **profound and ongoing emotional and psychological distress** as a direct result of Defendant's discriminatory and retaliatory actions. Being excluded from work and effectively terminated because of her disability led to sustained **anxiety, depression, humiliation, emotional exhaustion, and a sense of betrayal**. Plaintiff had served the company diligently and in good faith, and the sudden, unsupported dismissal from assignments without cause left her feeling **devalued and discarded**.

  Instances of **embarrassment and humiliation** were particularly acute and occurred at multiple stages:

  - At the **work site**, when Plaintiff was berated publicly by her supervisor in front of coworkers for requesting a safer method to complete her tasks;

- During engagement with **upper management**, who dismissed her concerns and failed to intervene or provide clarity;

- At the **company-assigned hotel**, when she was abruptly instructed to vacate while injured and was seen **limping and struggling to pack her belongings**;

- In front of **other hotel patrons**, from whom Plaintiff had to **seek help** lifting heavy items such as cooking equipment, computer gear, and extended-stay supplies into her vehicle—all while in visible pain.
- The emotional toll was compounded by the shame of having to rely on family for support, and the perception—both internally and externally—that losing her job was a personal failure rather than the result of discriminatory treatment.

These public moments were deeply **humiliating and disempowering**, especially given Plaintiff's prior standing as a dependable team member. The **loss of dignity** in these moments left lasting emotional scars.

The emotional impact extended well beyond the job itself. The **shame and helplessness** of suddenly losing income caused **immense psychological strain**. Plaintiff was unable to meet basic financial obligations, including car payments and credit responsibilities. This led to **irreparable harm to her credit**, damage to long-standing financial relationships, and a **loss of assets and future financial opportunities**. These cascading consequences only deepened the emotional toll, leaving Plaintiff with not only the trauma of discrimination but also **long-term financial insecurity and instability** tied directly to the unjust termination of her employment.

**Pattern of Neglect and Intimidation by Employer:** In addition to the discriminatory treatment directly related to her disability, Plaintiff was subjected to multiple instances of unsafe, hostile, and humiliating treatment by Spar's management, which contributed to the overall emotional, financial, and psychological harm she suffered.

For example, on or around **August 12, 2023**, while assigned to work at a location in New Hartford, New York, Plaintiff was placed in a **physically and emotionally dangerous situation** when Spar Marketing Force failed to extend her lodging reservation as promised. Despite having written confirmation that her stay at the Quality Inn was secured through August 19, 2023, Plaintiff was unexpectedly confronted by the hotel owner, who banged on her door, shouted threats, called her derogatory names, and ultimately called the police—**twice**—in an attempt to have her removed and arrested. Plaintiff, a law-abiding employee acting in good faith under the impression that her room had been paid for, was forced to **pack all of her belongings in distress and fear** of police action and physical harm.

The traumatic incident caused Plaintiff to suffer **fear for her safety, embarrassment in front of other guests and coworkers, emotional turmoil, and additional financial hardship**, including missed professional opportunities. Although a coworker assisted in packing, the emotional weight and public visibility of the situation made it deeply traumatic. Furthermore, Plaintiff now has her name associated with police records in that jurisdiction, despite having done nothing wrong.

Despite reporting this experience to Spar, Plaintiff was met with **indifference and dismissal**, and no support or redress was offered. This incident added to Plaintiff's overall fear of retaliation and further solidified her perception that **speaking up would jeopardize future employment opportunities** within the company, as those responsible for these oversights held significant internal power.

16. **Protected Activity and EEOC Charge:** On or about late 2023 (shortly after her termination from Spar), Plaintiff filed a timely Charge of Discrimination with the EEOC, **Charge No. 524-2024-00363**, alleging disability discrimination and retaliation by Spar Marketing Force, Inc. In this charge, she detailed the events of her injury, her requests for accommodation, and the subsequent loss of work. The filing of this charge was itself a protected activity under federal law.

17. **EEOC Proceedings:** The EEOC investigated Plaintiff's allegations. On January 24, 2025, the EEOC issued a Dismissal and Notice of Right to Sue, indicating that the EEOC had decided to close its investigation. The notice informed Plaintiff of her right to pursue the matter by filing a lawsuit in federal court within 90 days of receiving the notice. Plaintiff also sought reconsideration of the dismissal, but the EEOC (by letter dated February 18, 2025) denied reconsideration and reaffirmed that the 90-day deadline for filing suit remained in effect.

18. **Timeliness of this Action:** Plaintiff is filing this Complaint within 90 days of her receipt of the EEOC's Notice of Right to Sue. All **conditions precedent** to the filing of this lawsuit have therefore been satisfied or fulfilled.

**Claims for Relief:** Based on the above facts, Plaintiff asserts two causes of action under the ADA against Defendant Spar Marketing Force, Inc.:

## Count I – Disability Discrimination in Violation of the ADA

18. Plaintiff incorporates by reference all the foregoing paragraphs of this Complaint as though fully set forth herein.

19. **Qualified Individual with a Disability:** Plaintiff is a qualified individual with a disability within the meaning of the ADA. Her knee impairment substantially limits major life activities (including walking and standing), and/or Defendant regarded her as having such an impairment. At all relevant times, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation.

20. **Employer Covered by ADA:** Defendant Spar Marketing Force, Inc. is an employer subject to the ADA. It employs far more than 15 employees and engages in interstate commerce. Therefore, Defendant had a legal obligation to comply with the ADA's provisions, including the duty to provide reasonable accommodations to employees with disabilities.

21. **Failure to Accommodate:** Defendant violated the ADA, 42 U.S.C. § 12112(b)(5)(A), by failing to provide reasonable accommodations to Plaintiff's known disability. Plaintiff notified Spar of her medical condition and requested reasonable adjustments, yet Defendant **refused to engage in the interactive process** or offer any accommodation. No effective reason (such as undue hardship) was given for this refusal. The failure to accommodate Plaintiff's disability is a form of unlawful discrimination under the ADA.

22. **Discriminatory Discharge:** Further, Defendant terminated Plaintiff's employment (by refusing to assign her further work) **because of her disability** and/or because of her need for accommodation. Firing or constructively discharging an employee due to her disability constitutes intentional discrimination under 42 U.S.C. § 12112(a). The timing and circumstances — occurring immediately after her injury and requests — give rise to an inference that Plaintiff's disability was a motivating factor in the decision to end her employment.

23. **No Legitimate Reason:** Any legitimate, non-discriminatory reasons that Defendant might claim for its actions are pretextual. Plaintiff was performing her job satisfactorily before and even after the injury (with potential accommodations). The sudden exclusion from work only after she revealed her medical limitations indicates that the real reason for her termination was her **disability status and needs**, not any performance or business issue.

24. **Violation of ADA:** By the above acts and omissions, Defendant has **discriminated against Plaintiff on the basis of disability** in violation of Title I of the ADA (42 U.S.C. § 12111 **et seq.**, specifically § 12112). This discrimination includes the failure to accommodate and the unlawful termination of Plaintiff's employment because of her disability.

25. **Damages:** As a direct and proximate result of Defendant's disability discrimination, Plaintiff suffered damages including lost wages and benefits, emotional distress, and other compensatory damages, as described in paragraph 14 above. Defendant's conduct was willful or showed reckless indifference to Plaintiff's protected rights,

justifying an award of punitive damages as permitted by law.

## Count II – Retaliation in Violation of the ADA

26. Plaintiff incorporates by reference all the foregoing paragraphs of this Complaint as though fully set forth herein.

27. **Protected Activity:** Plaintiff engaged in **protected activity** under the ADA when she requested reasonable accommodations for her disability from her employer. Requesting an accommodation is activity protected from retaliation by 42 U.S.C. § 12203. Additionally, to the extent Plaintiff's communication of her injury and need for accommodation could be seen as asserting her ADA rights, it is protected. (Plaintiff's later filing of an EEOC charge is also a protected activity, but the primary retaliation at issue occurred before the EEOC charge, in response to her internal requests for accommodation.)

28. **Adverse Action:** Defendant took adverse action against Plaintiff **soon after** her protected activity. Specifically, Defendant removed her from its schedule and ceased assigning her any work, effectively terminating her employment. This exclusion from employment opportunities would **deter a reasonable person** from exercising her rights under the ADA, and thus qualifies as a materially adverse action for a retaliation claim.

29. **Causal Connection:** The timing and context of Defendant's actions establish a causal connection between Plaintiff's protected activity and the adverse action. Plaintiff's requests for accommodation (protected activity) were immediately followed by the termination of her assignments and employment (adverse action). The proximity in time and the lack of any other valid explanation for Plaintiff's sudden removal from work show that the action was taken **because of** her protected activity.

30. **Violation of ADA's Anti-Retaliation Provision:** By retaliating against Plaintiff for requesting accommodations (and/or for her anticipated assertion of ADA rights), Defendant violated § 503 of the ADA, 42 U.S.C. § 12203(a). This provision makes it unlawful for an employer to discriminate against an individual for opposing any act made unlawful by the ADA or for making a charge or assisting in any manner in an ADA proceeding. Defendant's conduct in this case is precisely the kind of retaliation the law forbids.

31. **Damages:** As a direct and proximate result of Defendant's retaliatory actions, Plaintiff suffered damages including but not limited to: loss of employment and income, emotional distress (aggravated by the feeling of being punished for asserting her rights), and other economic and non-economic losses. Plaintiff is entitled to recovery of these damages. Additionally, because Defendant's retaliation was intentional and in knowing disregard of Plaintiff's rights, an award of punitive damages is warranted to deter such

conduct in the future.

**Relief Requested (Prayer for Relief):**

WHEREFORE, Plaintiff Ayisha G. Oglivie respectfully requests that the Court enter judgment in her favor and grant the following relief against Defendant Spar Marketing Force, Inc.:

- **Front Pay in lieu of Reinstatement:** Award Plaintiff **front pay** to compensate for the loss of future earnings resulting from her wrongful exclusion and termination, as **reinstatement is not appropriate under the circumstances**. The employer acted in **bad faith**, created a **hostile work environment**, and engaged in a pattern of **discrimination, retaliation, unsafe working conditions, public humiliation, and intimidation**. The employment relationship has **deteriorated beyond repair**, and Plaintiff has experienced **long-term economic harm** due to the loss of her primary source of income. In light of these facts, returning to work for Defendant would be unreasonable, unsafe, and unjust.

- **Back Pay and Benefits:** Award Plaintiff all lost wages, benefits, and other compensation lost as a result of Defendant's actions, from the date of her exclusion from work through the date of judgment, plus pre-judgment interest.

- **Compensatory Damages:** Award compensatory damages for the **emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life** that Plaintiff has experienced due to the discrimination and retaliation.

- **Punitive Damages:** Award punitive damages as permitted by law, to punish Defendant for its willful, malicious, or recklessly indifferent conduct and to deter similar conduct in the future.

- **Reasonable Costs and Expenses:** Award Plaintiff the costs of this lawsuit and out-of-pocket expenses incurred. *(If Plaintiff later retains counsel, she will also seek statutory attorney's fees; as a pro se litigant, she reserves the right to amend this request upon obtaining representation.)*

- **Injunctive Relief:** Issue appropriate injunctive or equitable relief, such as an order requiring Defendant to **cease and refrain from any discriminatory or retaliatory practices**, to institute proper policies and training under the ADA, and to post and circulate notices concerning employees' rights.

- **Any Additional Relief:** Grant any further relief that the Court deems just and proper, in law or equity, including any available relief to fully compensate Plaintiff and to **make her whole** for the losses she has suffered.

**Jury Demand:** Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff **demands a trial by jury** on all issues so triable.

Respectfully submitted,

Dated: April 24, 2025

*/s/ Ayisha G. Oglivie*

*Ayisha G. Oglivie*

---

Ayisha G. Oglivie – **Plaintiff, Pro Se**
720 West 170th Street, #1D
New York, NY 10032
347-389-2445
ayisha.oglivie@gmail.com

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Houston District Office**
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website:  www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/24/2025

**To:** Ms. Ayisha Oglivie
720 W 170th St 1d
New York, NY 10032
Charge No: 524-2024-00363

EEOC Representative and email:     Jessica Deshotel
Investigator
Jessica.Deshotel@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Rayford O. Irvin
01/24/2025

Rayford O. Irvin
District Director

**cc:**
Alexandria Garman
1910 Opdyke Ct 1910 Opdyke Ct
Auburn Hills, MI 48326

Paul A Wilhelm
Clark Hill PLC
200 OTTAWA AVE NW STE 500
Grand Rapids, MI 49503

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 524-2024-00363 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 524-2024-00363 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)**

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

Enclosure with EEOC Notice of Closure and Rights (01/22)

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.