UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AYISHA G. OGLIVIE,

                     Plaintiff,

    -v-

SPAR MARKETING FORCE, INC.,

                     Defendant.

CIVIL ACTION NO. 25 Civ. 3436 (VSB) (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Pro se Plaintiff Ayisha G. Oglivie ("Ms. Oglivie") brings this action against her former employer, Defendant Spar Marketing Force, Inc. ("SPAR"), pursuant the Americans with Disabilities Act, 42 U.S.C § 12101 et seq. ("ADA"), asserting claims for employment discrimination and retaliation (the "ADA Claims"). (Dkt. No. 1 (the "Complaint")). SPAR moves to compel arbitration of the ADA Claims and to stay this action during the pendency of the arbitration (the "Arbitration") pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). (Dkt. Nos. 13–15 (the "Motion")). Ms. Oglivie has not responded to the Motion. (See Dkt. No. 21). For the reasons set forth below, the Motion is **GRANTED**, and this case is **STAYED** during the pendency of the Arbitration.[1]

---

[1] We decide the Motion, which the Honorable Vernon S. Broderick has referred (Dkt. No. 18), by opinion and order because a motion to compel arbitration and stay litigation is not a dispositive motion under 28 U.S.C. § 636(b)(1)(A). See, e.g., Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) ("District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).") (collecting cases), objections overruled, No. 10 Civ. 6950 (AT) (RWL), 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021); Zouras v. Goldman Sachs Group, Inc., No. 02 Civ. 9249 (BSJ) (GWG), 2003 WL 21997745, at *1 (S.D.N.Y. Aug. 22, 2003) ("Because a motion to compel arbitration and stay an action is not a

## II. BACKGROUND

### A. Factual Background

"On a motion to compel arbitration under the FAA, the court applies a standard similar to that applicable for a motion for summary judgment." Porcelli v. JetSmarter, Inc., No. 19 Civ. 2537 (PAE), 2019 WL 2371896, at *1 (S.D.N.Y. June 5, 2019); see Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability.").[2] Accordingly, although Ms. Oglivie did not respond to the Motion, (Dkt. Nos. 19–21), given the "special solicitude" we must afford her as a pro se litigant, Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988), we exercise our discretion to "conduct an assiduous review of the record," Dumel v. Westchester Cnty., 656 F. Supp. 3d 454, 457 n.2 (S.D.N.Y. 2023), and summarize the facts "in the light most favorable to" her as the nonmovant. Wandering Dago, Inc. v. Destito, 879 F.3d 20, 30 (2d Cir. 2018).

#### 1. Ms. Oglivie's Employment at SPAR

SPAR, a Delaware corporation headquartered in Michigan, provides marketing, merchandising, and distribution services to clients across the United States. (Dkt. Nos. 15 at 5; 14 at 2 ¶ 4; 1 at 2 ¶ 5). In June 2023, Ms. Oglivie began working for SPAR as a merchandising representative, performing retail merchandising and marketing assignment at client retail stores. (Dkt. Nos. 1 at 2 ¶ 6; 15 at 5).

---

dispositive motion under 28 U.S.C. § 636(b)(1)(A), this Court will decide the defendants' motion pursuant to an opinion and order.").

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

1. **The Arbitration Agreement**

On June 8, 2023, as part of her onboarding process at SPAR, Ms. Oglivie electronically signed a Confidentiality, Non-Solicitation and Arbitration Agreement (the "Arbitration Agreement"). (Dkt. No. 15 at 6; 14 at 3 ¶¶ 8–9; 14-1; 14-2). Pursuant to the Arbitration Agreement, Ms. Ogilvie and SPAR mutually agreed to arbitrate the following claims:

> …**any and all claims** (whether under common law, statute, regulation or otherwise), that the Employee may have against the Employer, any other SPAR Company, or any of their respective Representatives, and all successors and assigns of any of them, or that the Employer or other applicable SPAR Company might have against the Employee, including (without limitation) any claim or other dispute directly or indirectly (i) **respecting any** breach of contract, misclassification, wage and hour violation, **discrimination,** harassment **or retaliation**, (ii) the Employee's relationship with the Employer or other applicable SPAR Company or the provision by the Employee services or work to the applicable SPAR Company, or (iii) arising out of or related to this Agreement, that the Employee may have against the Employer or other applicable SPAR Company or any of its Representatives, and all successors and assigns of any of them, or that the Employer or other applicable SPAR Company might have against the Employee . . . .

(Dkt. No. 14-1 at 6 ¶ 12(a)) (emphasis added).

Ms. Ogilvie and SPAR further agreed that:

> …binding arbitration shall replace going before any government agency or a court for a judge or jury trial, and neither the Employee, nor the Employer nor any other applicable SPAR Company is permitted to bring any claim or action before any such entity. The Employee and the Employer (on behalf of itself and each other applicable SPAR Company) each waive the right to have a court or jury trial on any arbitrable claim.

(Id.)

The Arbitration Agreement, which is governed by Michigan law, also specifies arbitration procedures including venue, discovery rules, and allocation of fees and costs. (Dkt. No. 14-1 at 6–7 ¶¶ 12(b)–(d), 8 ¶ 16).

### 2. The ADA Claims

#### a. The Pre-Existing Condition

Ms. Oglivie alleges that "prior to her employment with [SPAR], [she] had a documented knee condition that substantially limits one or more major life activities, including walking, standing, lifting, and kneeling" (the "Pre-Existing Condition") and that SPAR knew of the Pre-Existing Condition. (Dkt. Nos. 1 at 2 ¶ 7). Despite the Pre-Existing Condition, Ms. Oglivie "was able to perform the essential functions of her job when provided minor accommodations or adjustments." (Id.)

#### b. The Injury

On October 9, 2023, while working for SPAR on a project at a Walmart store in New Jersey (the "New Jersey Project"), Ms. Oglivie sustained an injury to her knee that aggravated her Pre-Existing Condition. (Dkt. No. 1 at 2–3 ¶ 8 (the "Injury")).[3] Ms. Oglivie "immediately reported [the Injury] to her supervisor or management at [SPAR]," (id. at 3 ¶ 8), and requested the following accommodations to continue working: (i) "[t]emporarily refraining from strenuous activities (such as heavy lifting or prolonged standing) to allow her knee to recover;" (ii) "[r]eassignment to lighter duties or different projects that would be less physically demanding on her knee;" and (iii) [s]cheduling flexibility or a brief medical leave to obtain treatment for her [I]njury." (Id. at 3 ¶ 9 (the "Requests")).

Ms. Oglivie alleges that SPAR "effectively ignored or outright denied her [R]equests" without undertaking an "interactive process" or "explor[ing] possible accommodations[,]" (Dkt. No. 1 at 3 ¶ 11), and instead removed her from the New Jersey Project, "excluded [her]

---

[3] Ms. Oglivie does not specify whether the Injury was to her right or left knee. (Dkt. No. 1 at 2–3 ¶ 8).

4

from further projects and assignments[,]" and forced her to vacate her company-assigned lodging. (Id. at 3–4 ¶¶ 12–15). Ms. Oglivie alleges that "although [SPAR] did not formally fire [her] in writing . . . the complete lack of further assignments acted as a constructive discharge." (Id. at 4 ¶ 13). Ms. Oglivie further alleges that after she reported the Injury to her direct supervisor at SPAR, he became "hostile" towards her, which she believes was motivated by "personal animus and retaliatory intent." (Id. at 4 ¶¶ 14–15).[4]

As a result of the alleged employment discrimination and retaliation by SPAR, Ms. Oglivie allegedly suffered (i) economic harm in the form of lost wages; (ii) physical harm to her knee; and (iii) emotional distress. (Dkt. No. 1 at 4–7 ¶ 15).

B. **Procedural History**

 1. **The EEOC Charge**

In late 2023, Ms. Oglivie filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 524-2024-00363 (the "EEOC Charge"), alleging disability discrimination and retaliation by SPAR. (Dkt. No. 1 at 2 ¶ 3, 7 ¶ 16).[5] On January 24, 2025, the EEOC issued a Determination and Notice of Rights (the "EEOC Notice"), (id. at 2 ¶ 3, 7 ¶ 16; see also id. at 13–17), informing Ms. Oglivie of its decision to close its investigation and her

---

[4] SPAR offers a different version of events following the Injury. (Dkt. No. 15 at 7–8). SPAR states that it did not "suspend[], discipline[], or [take] [Ms. Oglivie] off work in any way[,]" but instead, after Ms. Oglivie reported the Injury to her supervisor, she "walked off the job" on October 11, 2023 and "never returned[,]" leading SPAR to "change[] her employment status to 'Terminated' in May 2024." (Dkt. No. 14 at 4 ¶¶ 16–17; 15 at 7–8). Because we construe the facts in the light most favorable to Ms. Ogilvie, these factual differences do not impact our analysis. (See § II.A, supra).

[5] The parties have not attached a copy of the EEOC Charge to the Complaint or the Motion. (See Dkt. Nos. 1; 13–15). Given that Ms. Oglivie, a pro se litigant, attached to the Complaint a copy of the Notice that references the EEOC Charge, and SPAR does not dispute that Ms. Oglivie filed the EEOC Charge before she commenced this action, for the purpose of deciding the Motion, the Court accepts that Ms. Oglivie filed the EEOC Charge before commencing this action. (See § II.A, supra).

5

right to pursue the matter by filing a lawsuit in federal court within 90 days of receiving the Notice.  (Id. at 7 ¶ 17; see id. at 13–17).  The EEOC denied Ms. Oglivie's subsequent request for reconsideration of the dismissal.  (Id. at 7 ¶ 17).

### 2. The Complaint and the Motion

On April 24, 2025, Ms. Oglivie filed the Complaint asserting the ADA Claims.  (Dkt. No. 1).  Ms. Oglivie does not reference the Arbitration Agreement in the Complaint.  (Id.)  On August 5, 2025, SPAR filed the Motion, which Judge Broderick referred to the undersigned. (Dkt. Nos. 13–15; 18).  Pursuant to Local Civil Rule 6.1(b), Ms. Oglivie's deadline to oppose the Motion was August 19, 2025.  See Local Civil Rule 6.1(b).  On September 9, 2025, Ms. Oglivie having not responded to the Motion, the Court sua sponte extended to October 7, 2025 her time to respond.  (Dkt. No. 19).  On October 10, 2025, Ms. Oglivie still having not responded to the Motion, we further extended to October 24, 2025 her deadline to respond and warned her that failure to do so would "result in the Court deeming the Motion unopposed and deciding the Motion based on [SPAR's] submission alone."  (Dkt. No. 20).  On October 30, 2025, Ms. Oglivie still having not responded to the Motion, we deemed the Motion unopposed.  (Dkt. No. 21).

### III. DISCUSSION

#### A. Legal Standard

Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]"  9 U.S.C. § 2.  "The FAA embodies a national policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather

than litigate, their disputes." Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP, No. 22 Civ. 5212 (JPC) (JEW), 2023 WL 2138693, at *2 (S.D.N.Y. Feb. 21, 2023) (quoting Doctor's Assocs. v. Alemayehu, 934 F.3d 245, 250 (2d Cir. 2019)). "Because the FAA intended to place arbitration agreements upon the same footing as other contracts, arbitration remains a creature of contract." Gordon, 2023 WL 2138693, at *2 (quoting Doctor's Assocs., 934 F.3d at 250). The Second Circuit has noted that:

> [t]he Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (1988), requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation.

Vera v. Sacks & Co., 335 F.3d 109, 116 (2d Cir. 2003).

To determine whether to compel arbitration, courts perform a two-step inquiry. See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003) (per curiam). At step one, the court considers whether "the parties enter[ed] into a contractually valid arbitration agreement[.]" Id. At step two, the court considers "whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate." Citigroup Inc. v. Sayeg, No. 21 Civ. 10413 (JPC), 2022 WL 179203, at *5 (S.D.N.Y. Jan. 20, 2022). "[I]f the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." Id. (quoting Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 69 (2019)). "But if it does not, then the Court must determine whether the parties' dispute fall[s] within the scope of the arbitration agreement." Citigroup, 2022 WL 179203, at *5 (quoting Cap Gemini, 346 F.3d at 365).

After conducting the two-step inquiry, courts then consider "whether one party to the agreement has failed, neglected or refused to arbitrate." Citigroup, 2022 WL 179203, at *5

7

(quoting Beijing Shougang Mining Inv. Co. v. Mongolia, 11 F.4th 144, 162 (2d Cir. 2021)). "A party has refused to arbitrate if [she] commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." Citigroup, 2022 WL 179203, at *5 (quoting Beijing, 11 F.4th at 162).

"Once a party petitions to compel arbitration, the court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Beijing, 11 F.4th at 162 (quoting 9 U.S.C. § 4) (citation modified).

B. Application[6]

Although Ms. Oglivie did not respond to the Motion, we consider all reasonable arguments she could have made in opposition to the Motion and analyze them below. (See § II.A, supra).

1. **The Parties Entered Into a Valid Agreement to Arbitrate**

We first consider whether "the parties enter[ed] into a contractually valid arbitration agreement[.]" Cap Gemini, 346 F.3d at 365. "The party moving to compel arbitration has the initial burden of showing that the parties agreed to arbitrate." Citigroup, 2022 WL 179203, at *5. "While parties may agree to arbitrate threshold questions such as whether the arbitration clause applies to a particular dispute . . . parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." Id. (citation

---

[6] Given that the Motion seeks to compel arbitration of the ADA Claims, we do not analyze the merits of the ADA Claims at this stage. (See Dkt. Nos. 13–15).

8

modified). Thus, "[t]o satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010).

Here, Ms. Oglivie and SPAR entered into an unambiguous agreement — the Arbitration Agreement — to arbitrate "any and all claims . . . that [Ms. Oglivie] may have against [SPAR] . . . including (without limitation) any claim or other dispute . . . respecting . . . discrimination, harassment or retaliation[.]" (Dkt. No. 14-1 at 6 ¶ 12(a)).[7] Ms. Oglivie further agreed that "binding arbitration shall replace going before any government agency or a court for a judge or jury trial, and . . . waive[d] the right to have a court or jury trial on any arbitrable claim." (Id.) The Arbitration Agreement also contains specific arbitration procedures, including the venue for the Arbitration, discovery rules, and fees and costs. (Dkt. No. 14-1 at 6–7 ¶¶ 12(b)–(d)). As for consideration, the "offer of [] employment alone is sufficient consideration to support an agreement for arbitration." Chen-Oster, 449 F. Supp. 3d at 241.

Accordingly, the parties entered into a contractually valid agreement to arbitrate "any and all claims[,]" that Ms. Oglivie may have against SPAR, including the ADA claims. See Citigroup, 2022 WL 179203, at *6 (finding that clause providing that "any dispute regarding the applicability

---

[7] Ms. Oglivie's electronic signature on the Arbitration Agreement does not affect its enforceability. (See Dkt. Nos. 14-1 at 10; 14-2). Courts consistently enforce electronically-signed arbitration agreements. See Barrows v. Brinker Rest. Corp., 36 F.4th 45, 50 (2d Cir. 2022) (finding a valid arbitration agreement where the agreement "bear[s] [plaintiff's] electronic signature"); Palmer v. Starbucks Corp., 735 F. Supp. 3d 407, 418 n.5 (S.D.N.Y. 2024) (finding a valid arbitration agreement where plaintiff executed the agreement electronically); Armstead v. Starbucks Corp., No. 17 Civ. 1163 (PKC), 2017 WL 5593519, at *5–6 (S.D.N.Y. Nov. 17, 2017) (same). Further, when Ms. Oglivie electronically signed the Arbitration Agreement, she agreed that "[c]hecking the checkbox above is equivalent to a handwritten signature." (Dkt. No. 14-1 at 10).

. . . of the benefit will be submitted to [] arbitration" evidenced "broad agreement to arbitrate questions involving the benefits afforded to [former employee]").

   2. **The Parties Did Not Delegate Arbitrability to the Arbitrator**

Turning to the next question, whether the Court or an arbitrator should decide if the dispute falls within the scope of the Arbitration Agreement, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." Citigroup, 2022 WL 179203, at *6 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Here, the Arbitration Agreement does not clearly and unmistakably delegate the issue of arbitrability to the arbitrator. To the contrary, it provides that SPAR may enforce the Agreement "at law, in equity or in any other forum available under applicable law[,]" (Dkt. No. 14-1 at 8 ¶ 15), and further delegates the power to reduce the scope of any unenforceable provision to a court or other governmental authority:

> In the event that any provision . . . shall be determined to be superseded, invalid, illegal or otherwise unenforceable pursuant to applicable law by a court or other governmental authority having jurisdiction and venue because of the scope or duration of any such provision, **the Parties agree that such court or other governmental authority shall have the power, and is hereby requested by the Parties, to reduce the scope or duration of such provision to the maximum permissible under applicable law so that said provision shall be enforceable in such reduced form**.

(Id. at 9 ¶ 17).

Accordingly, given that the parties did not clearly agree to submit the question of arbitrability to the arbitrator, "the arbitrability of the [] dispute [is] subject to independent review by the courts." First Options of Chi., 514 U.S. at 947; cf. Spates v. Uber Techs., Inc., No. 21 Civ. 10155 (ALC), 2023 WL 3506138, at *3 (S.D.N.Y. Mar. 31, 2023) (finding clear and unmistakable evidence of delegation to the arbitrator provision that "the arbitrator . . . shall have exclusive

authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this [a]rbitration [a]greement, including any claim that all or any part of this [a]rbitration [a]greement is void or voidable[,]" and "shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the [t]erms are unconscionable . . .").

### 3. The ADA Claims Fall Within the Scope of the Arbitration Agreement

Having found that we may decide the issue of arbitrability, we "must determine whether the [ADA Claims] fall[] within the scope of the [A]rbitration [A]greement." Citigroup, 2022 WL 179203, at *5 (citation modified). We find that they do.

The Arbitration Agreement not only captures "any and all claims" that Ms. Oglivie may have against SPAR, but it also specifically includes discrimination and retaliation claims. (Dkt. No. 14-1 at 6 ¶ 12(a)). Courts have routinely held that a broad arbitration clause, especially one that references discrimination claims, mandates arbitration of employment discrimination claims. See Chen-Oster, 449 F. Supp. 3d at 243 (S.D.N.Y. 2020) (finding that arbitration clause capturing "any possible type of employment-related dispute between the signatories" mandated arbitration of employment discrimination claims); Borden v. Wavecrest Mgmt. Team Ltd., No. 11 Civ. 6737 (GBD) (FM), 2012 WL 4094959, at *2 (S.D.N.Y. Sept. 18, 2012) (finding that "broad arbitration clause" contained in employment agreement "unambiguously mandate[d] binding arbitration" of ADA discrimination claim); Weiss v. Travex Corp., No. 02 Civ. 2380 (SAS), 2002 WL 1543875, at *2–3 (S.D.N.Y. July 12, 2002) (granting motion to compel arbitration of former employee's discrimination claims where employment contract provided that "all disputes and/or controversies arising out of [former employee's] employment . . . shall be settled by

binding arbitration"); Rajjak v. McFrank & Williams, No. 01 Civ. 0493 (LAP), 2001 WL 799766, at *1–2 (S.D.N.Y. July 13, 2001) (compelling arbitration of employment discrimination and retaliatory discharge claims where arbitration clause required arbitration of "any dispute of any kind between [parties], whether or not arising out of this Agreement . . .").

Accordingly, consistent with courts in this District, we find that the ADA Claims fall within the scope of the Arbitration Agreement.

### 4. Ms. Oglivie Refused to Arbitrate

By filing the Complaint, Ms. Oglivie "refused to arbitrate[.]" (Dkt. No. 1). See Beijing, 11 F.4th at 162 ("A party has refused to arbitrate if it commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so.") (citation modified); Gordon, 2023 WL 2138693, at *3, 9 (same).

### 5. There Are No Non-Arbitrable Claims

Although Ms. Oglivie does not raise this issue, we sua sponte consider whether the ADA Claims are non-arbitrable as a matter of law, given that the Arbitration Agreement excludes "any claim that as a matter of law is not arbitrable." (Dkt. No. 14-1 at 6 ¶ 12(a)). We find that the ADA Claims are arbitrable.

Courts in this District have routinely held that employment discrimination claims under the ADA are arbitrable. See LeDeatte v. Horizon Media, 571 F. Supp. 3d 72, 76 (S.D.N.Y. 2021) ("[W]e note that courts in this Circuit have repeatedly held that Congress did not intend that . . . ADA claims be nonarbitrable"); Borden, 2012 WL 4094959, at *2 (compelling arbitration of ADA discrimination claim); Zouras v. Goldman Sachs Group, Inc., No. 02 Civ. 9249 (BSJ) (GWG), 2003

WL 21997745, at *1, 3 (S.D.N.Y. Aug. 22, 2003) (compelling arbitration of employment discrimination claims, including claims under the ADA).

Accordingly, the ADA Claims are arbitrable as a matter of law and are not excluded from binding arbitration under the Arbitration Agreement.

### C. This Action is Stayed Pending the Arbitration

Having found that the ADA Claims must be referred to arbitration, and SPAR having requested a stay of this action pending the Arbitration, (Dkt. No. 15 at 13), we stay the action during the pendency of the Arbitration. See Smith v. Spizzirri, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, [Section] 3 of the FAA compels the court to stay the proceeding."); LeDeatte, 571 F. Supp. 3d at 76 ("[T]he FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

### IV. CONCLUSION

Accordingly, (i) the Motion is **GRANTED**, (ii) Ms. Oglivie is **COMPELLED** to arbitrate the ADA Claims pursuant to the Arbitration Agreement, and (iii) this case is **STAYED** during the pendency of the Arbitration. SPAR shall file a joint letter setting forth the status of the Arbitration by **January 20, 2026,** and **every 60 days thereafter** until the Arbitration has concluded.

The Clerk of Court is respectfully directed to close Dkt. No. 13.

Dated:   New York, New York
         November 19, 2025

                                          SO ORDERED.

                                          _____
                                          SARAH L. CAVE
                                          United States Magistrate Judge

13